# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DUSTAN DOBBS, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>DEPUY ORTHOPAEDICS, INC., DEPUY INC., )<br>DEPUY INTERNATIONAL LTD., JOHNSON & )<br>JOHNSON, JOHNSON & JOHNSON SERVICES, )<br>INC., and JOHNSON & JOHNSON )<br>INTERNATIONAL, )<br>)<br>    Defendants. ) | Case No. 15 cv 8032<br><br>Judge Sharon Johnson Coleman |

## MEMORANDUM OPINION AND ORDER

Petitioner, George E. McLaughlin, filed a Motion to Enforce an Attorney Lien for Fees and Expenses on behalf of himself and John Gehlhausen, P.C., Anthony G. Argeros (deceased), and Anthony G. Argeros, LLC, in association with the representation of Dustan Dobbs in a personal injury and products liability claim against DePuy Orthopaedics, Inc., DePuy Inc, DePuy International Ltd., Johnson & Johnson, Johnson & Johnson Services, Inc., and Johnson & Johnson International (collectively "DePuy"). This Court allowed supplementary briefing on the attorney's lien. For the reasons stated below, this Court grants petitioner's motion.

**Background**

On August 20, 2012, Dustan Dobbs signed a written Attorney-Client Agreement ("Agreement"), retaining the law firms of Anthony G. Argeros, P.C., and John Gehlhausen, P.C., and attorneys Antony G. Argeros, John Gehlhausen, and George E. McLaughlin, to represent him in a product liability and personal injury claim against DePuy. The Agreement was contingency based and the attorneys would receive 35% of the gross amount recovered from the claim by

1

settlement or judgment and reimbursement of all expenses advanced. (Dkt. 32-1, Ex. 1, email from Argeros to Dobbs, 8/17/2012).

On August 22, 2012, the attorneys filed a civil action on behalf of Dobbs in the Northern District of Ohio pursuant to MDL 2197 and the *DePuy* litigation. McLaughlin asserts that he and his co-counsel adhered to all case management orders, collected Dobbs medical records, act sheets, monitored the multidistrict *DePuy* litigation, and attended to all details of maintaining Dobbs' case. Dobbs contends that the attorneys did very little work on the case.

On November 19, 2013, the defendants in the *DePuy* litigation proposed a settlement. McLaughlin advised Dobbs by letter of the settlement off of a base amount of $250,000. McLaughlin further advised Dobbs that the nature of his injuries would not likely qualify him for any enhancements beyond the base amount and that it was McLaughlin's recommendation that Dobbs register and enroll as a participant in the settlement. McLaughlin advised that it was not economical to proceed to trial. (Dkt. 32-1, Ex. 2, Letter from McLaughlin to Dobbs, 11/22/2013). McLaughlin followed up in an email on December 13, 2013, stating:

> I agree that you should register. We then have about 3 months to decide if you want to participate (accept) the settlement. If you do, it is not up to me or to you to decide whether you qualify for the enhanced award. Those who qualify have to meet certain criteria set in the settlement, such as a failed first revision and having a second revision surgery, or having bilateral failed and revised ASR implants. There are others. If you qualify for an enhanced award, then you do; and if you do not, you do not. It is not a matter of advocacy or appeal. Purely a matter of what your records show, and what the terms of the settlement allow.
>
> The other option is to reject the settlement in its entirety and take a case to trial. That will cost several hundreds of thousand dollars (really, not kidding) to properly try the case, and about 6 to 8 weeks of time. The trial date will be probably more than two years away as the court has to remand the cases that do not settle to their local federal courts, and that will not happen until long after the April deadline to participate passes. Dkt. 32-1, Ex. 4, email from McLaughlin to Dobbs, 12/13/2013.

Attorney Anthony Argeros died on January 30, 2014. On February 28, 2014, McLaughlin left the firm John Gehlhausen, P.C., and joined the law firm of Warshauer-McLaughlin Law Group. On

March 10, 2014, McLaughlin sent Dobbs an email explaining that he believed Dobbs would qualify for the $250,000 base award, but that he did not believe Dobbs would qualify for any enhancement because his injury did not meet the criteria under the terms of the settlement. Dkt. 32-1, Ex. 5, email from McLaughlin to Dobbs, 3/10/2014.

On March 12, 2014, Dobbs sent McLaughlin a letter stating that he was very discouraged about his case, that he thought McLaughlin was trying to pressure him into taking the *DePuy* MDL settlement offer, and that the late Anthony Argeros had discussed "going to trial and possibly winning a settlement greater than the base amount." Dkt. 32-1, Ex. 7, letter from Dobbs to McLaughlin, 3/12/2014. The letter also stated that Dobbs had received his case file form Argeros' office along with a termination letter and, further, that Dobbs understood the termination to include McLaughlin's representation as well. The letter invited McLaughlin to forward a new Attorney-Client Agreement. On March 12, 2014, McLaughlin responded to Dobbs' letter by email memorializing that Dobbs was discharging McLaughlin as counsel. Dkt. 32-1, Ex. 8, email from McLaughlin to Dobbs, 3/12/2014. The email reiterated McLaughlin's assessment of Dobbs' case and his recommendation that the settlement offer was much more favorable than a trial would likely be and that per the Agreement that Dobbs had signed he was ultimately responsible for the expenses incurred in the case. *Id.* Further, it was McLaughlin's assessment that in light of the risk of an unfavorable result at trial, McLaughlin would be unwilling to assume the expenses of taking the case to trial. *Id.* McLaughlin proposed that if Dobbs had the financial resources to take the case to trial, then McLaughlin would consider entering a new Attorney-Client Agreement with him on those terms. *Id.* He concluded by reminding Dobbs of the deadline of April 1 for participating in the settlement. *Id.* McLaughlin explained all of that again in an email the following day. Dkt. 32-1, Ex. 9, email from McLaughlin to Dobbs, 3/13/2014.

By email on March 14, 2014, McLaughlin explained the fee structure under the Agreement if Dobbs accepts the $250,000 settlement. Dkt. 32-1, Ex. 10, email from McLaughlin to Dobbs, 3/14/2014. On April 1, 2014, McLaughlin sent Dobbs a letter in response to Dobb's letter of March 31, 2014. The April 1 letter states "any agreement regarding a waiver of attorneys' liens for work done and expenses paid on your case to date, or a modification of the fee owed under that agreement, must be agreed to by binding authorities on behalf of Mr. Argeros's estate, and the John Gelhausen, P.C. law firm. I do not have the authority to bind the estate of Anthony G. Argeros, or his former law firm, Anthony G. Argeros, LLC, with whom you have signed the attorney-client agreement." Dkt. 32-1, Ex. 11, letter from McLaughlin to Dobbs, 4/1/2014. Dobbs responded on April 23, 2014, disputing what he believed to be McLaughlin asserting attorneys' lien on the $250,000 settlement if Dobbs accepts it. Dkt. 32-1, Ex. 12, letter from Dobbs to counsel, 4/23/2014. The letter further stated that Dobbs expected McLaughlin to continue representing him until he retains another attorney or the lien issue is resolved. *Id.*

On October 17, 2014, Dobbs submitted a Change of Representation Status form in the *DePuy* litigation. McLaughlin acknowledged that Dobbs formally discharged him. On December 30, 2014, McLaughlin filed his Motion for Withdrawal as Counsel in the *DePuy* litigation indicating that he was terminated by Dobbs on October 17, 2014. At the same time, McLaughlin filed his Motion to Enforce Charging Lien for Attorney's Fees and Expenses under Illinois law in the Northern District of Ohio. He served a copy of the Notice of Attorney's Lien on Dobbs by certified mail, return receipt requested, and also by email. The court granted McLaughlin's motion to withdraw on January 8, 2015.

**Discussion**

McLaughlin argues on behalf of himself, the estate of Anthony Argeros, and John Gelhausen, that they are entitled to attorneys' fees and costs for the year and five months they

4

spent working on Dobbs' case. McLaughlin claims to have done all the substantive work since he was licensed to practice in both Illinois and Ohio. Further, McLaughlin asserts that they have a valid attorney's lien, and even if they did not perfect a statutory lien, they are entitled to fees on a *quantum meruit* basis. McLaughlin is not seeking fees on the portion of the settlement beyond the base amount of $250,000. As an initial matter, this Court notes that, under Illinois law, the death of attorney Anthony Argeros does not affect McLaughlin, the Argeros estate, or Gehlhausen from bringing this action for attorney's fees under the Agreement. *See Lewsader v. Walmart*, 296 Ill. App. 3d 169, 176 (4th Dist. 1998).

Next, this Court considers whether Illinois or Ohio law applies to the claim for attorney's fees under these facts. The determination of attorney's fees arising out of litigation, and sought out of the proceeds of the settlement fund resulting from the same litigation, falls within the ambit of the court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367. *Vance v. Gallagher*, 280 Fed. Appx. 533, 536 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299-1301 (7th Cir. 1995), *Clarion Corp. v. Am. Home Prods. Corp.*, 464 F.2d 444, 445 (7th Cir. 1972), and *Abbott Labs. v. CVS Pharmacy, Inc.*, 290 F.3d 854, 858 (7th Cir. 2002)). Federal district courts exercising diversity jurisdiction "must apply the choice of law principles of the forum state to determine which state's substantive law governs the proceeding." *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006). Illinois follows the Restatement (Second) of Conflict of Laws in making choice of law decisions. *Morris B. Chapman & Assocs., Ltd. v. Kitzman*, 193 Ill. 2d 560, 739 N.E.2d 1263, 1269, 251 Ill. Dec. 141 (2000).

Under both Ohio and Illinois law, when an attorney and a client enter into a fee agreement, if the client terminates the attorney, the contract ceases to be operative. In that instance, the attorney may recover fees for his services under the equitable theory of *quantum meruit*. *See In re Estate of Callahan*, 144 Ill. 2d 32, 578 N.E.2d 985, 987, 161 Ill. Dec. 339 (1991); *Kannewurf v. Johns*, 260 Ill.

5

App. 3d 66, 632 N.E.2d 711, 717, 198 Ill. Dec. 381 (5th Dist. 1994); *Goldauskas v. Elyria Foundry Co.*, 145 Ohio App. 3d 490, 496, 763 N.E. 2d 645, 650 (Ohio Ct. App., Lorain County 2001).

In this case, Dobbs terminated McLaughlin and his co-counsel's representation before their rights under the Agreement accrued, i.e. before Dobbs accepted the settlement offer from *DePuy*, and Dobbs was not served with notice of the attorney's lien during the existence of the attorney-client relationship, McLaughlin may no longer seek to recover fees under the contract. *See In re Chicago Flood Litig.,* 289 Ill. App. 3d 937, 943, 682 N.E. 2d 421 (1st Dist. 1997); *The Dep't of Pub. Works v. Exchange Nat'l Bank,* 93 Ill. App. 3d 390, 394, 417 N.E. 2d 1045 (2d Dist. 1981). However, McLaughlin may seek to recover fees under a theory of quantum meruit.

Because a *quantum meruit* claim sounds in restitution rather than contract, we look to the restitution section of the Restatement to evaluate whether Ohio or Illinois law should be applied to McLaughlin's claim. *Overseas Dev. Disc Corp. v. Sangamo Constr. Co.*, 686 F.2d 498, 510-11 (7th Cir. 1982). The restitution section provides that the law of the state with the most significant contacts governs. Restatement (Second) of Conflict of Laws § 221(2). Dobbs is an Illinois resident, the Agreement was entered in Illinois, the injuries which formed the basis of his underlying lawsuit occurred in Illinois, the civil complaint was filed in the Northern District of Ohio only to join the MDL in the *DePuy* litigation, and the complaint specifically states that the appropriate venue would be Illinois if there were not the *DePuy* litigation in progress. Illinois law therefore must govern.

*Quantum meruit* is a common law quasi-contractual principle that may allow a discharged attorney to be compensated for services rendered prior to discharge. *Fleisner v. Fitzgerald*, 403 Ill. App. 3d 355, 368 (2010); *see also Goyal v. Gas Tech. Inst.*, 718 F.3d 713, 719 (7th Cir. 2013). Under *quantum meruit* the court is to award the attorney "as much as he deserves" to compensate for his services. *Kannewurf*, 260 Ill. App. 3d at 74. When determining how much to award an attorney under *quantum meruit*, the trial court should assess all of the relevant factors including the time and labor

6

required, attorney's skill and standing, the nature of the cause, the novelty and difficulty of the subject matter, the attorney's degree of responsibility in managing the case, the usual and customary charge for that type of work in the community, and the benefits of the results for the client. *Will v. Northwestern Univ.*, 378 Ill. App. 3d 280, 304 (2007); *Wegner*, 305 Ill. App. 3d at 693; *Kannewurf*, 260 Ill. App. 3d at 74. In cases where the attorney has done much of the work and is fired immediately before a settlement is reached, the factors involved in determining a reasonable fee would justify a finding that the entire contract fee is the reasonable value of services rendered. *Rhoades v. Norfolk & W.R. Co.*, 78 Ill. 2d 217, 227-28 (1979); *Wegner v. Arnold*, 305 Ill. App. 3d 689, 693 (1999).

In this case, McLaughlin is entitled to the full contractual amount of the contingency or 35% of the base settlement. As noted above, McLaughlin is not seeking to recover on any settlement amount beyond the base amount of $250,000. McLaughlin and his co-counsel were retained by Dobbs on August 20, 2012. Two days later, through the effort of McLaughlin and Argeros, Dobbs filed a civil complaint in federal court claiming products liability and personal injury, and was able to join the *DePuy* litigation. McLaughlin asserts that he and his co-counsel adhered to all case management orders, collected Dobbs medical records, act sheets, monitored the *DePuy* litigation, and attended to all details of maintaining Dobbs' case. Although Dobbs contends that this was not a significant expenditure of work, he undoubtedly benefitted from it since it was through the efforts of counsel that he was able to participate in the *DePuy* settlement even if he believes his injuries are worth more. The *DePuy* settlement was proposed on November 19, 2013, plaintiffs had until April 1, 2014, to register to participate in the settlement. The record before the Court shows that McLaughlin repeatedly explained to Dobbs why he believed the settlement was in Dobbs' best interest and why a trial was not an economically wise option. The deadline for plaintiffs to accept or

reject the settlement was October 22, 2014.[1] Dobbs terminated McLaughlin as counsel on October 17, 2014, and then accepted the settlement. Under the terms of the settlement, Dobbs would receive a net settlement of $165,000 if he is not represented, but $162,500 if he is represented by counsel after the attorney fees or common benefit fees are deducted. Accordingly, this Court finds that McLaughlin is entitled to the 35% of the Part A, base settlement award plus expenses. This Court notes that McLaughlin is preserving his right to seek fees on any enhancement or Part B settlement award should Dobbs receive one.

**Conclusion**

Based on the foregoing discussion this Court grants petitioner's Motion to Enforce the Attorney's Lien for Fees and Expenses.

IT IS SO ORDERED.

Date: April 18, 2016

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge

---

[1] Dobbs represents that he accepted the settlement on February 8, 2015, yet the record indicates the deadline for doing so was October 22, 2014. There is no apparent explanation for this discrepancy.